THE PEOPLE OF THE STATE OF NEW YORK EX REL. ABRAHAM ROBISON, THADDEUS O. HOTCHKISS AND ROBERT MOODY, SUPERVISORS, RESPECTIVELY, OF THE TOWNS OF GENEVA, PHELPS AND SENECA, IN ONTARIO COUNTY, NEW YORK, RESPONDENTS, v. THE BOARD OF SUPER-VISORS OF THE COUNTY OF ONTARIO, NEW YORK, APPELLANT.

*Chapter 327 of 1873 — limitation of appeals imposed by, still in force — not repealed by section 3 of chapter 49 of 1876.*

Chapter 327 of 1873 providing, among other things, that any appeal to the State assessors, " the determination of which is not made and filed with the clerk of the said board of supervisors, on or before the commencement of the next succeeding annual session thereof, shall be null and void, and the same shall be deemed as dismissed," was not repealed by section 3 of chapter 49 of the Laws of 1876, but is still in full force and effect.

APPEAL from a judgment, entered under the direction of the court at Special Term, awarding a *peremptory mandamus* to compel the execution of three several determinations of the State assessors, in favor of the towns of Seneca, Geneva and Phelps.

The three towns severally appealed in 1876 to the State assessors from the equalization of assessments and the correction of assessment-rolls for the year 1876, made by the board of supervisors of Ontario county.

The State assessors took proofs in August, 1877, and the appeals were submitted to them in September, 1877.

The State assessors made their determination October 1, 1877, but did not deliver them or file them until the 8th or 9th of October, 1877. The annual session of the board of supervisors commenced October 2d, 1877, as fixed and required by law. The appeals were decided October 1st, 1877, and received by mail by the clerk of the board of supervisors October 9th, 1877.

*H. L. Comstock*, for the appellant.

*Frank Rice* and *F. O. Mason*, for the respondents.

Hardin, J.:

Chapter 327 of the Laws of 1873, added a 14th section to the Laws of 1859 (chap. 312), and the effect of the addition was to regulate the dismissal of appeals. Before the act of 1873 there was no limitation upon the pendency of appeals.

The comptroller by section 13 of the Laws of 1859 was authorized to hear appeals, and the section then prescribed his duty. It provided that "after hearing such proofs he shall determine whether *any*, and *if any, what* deduction ought to have been made from the corrected valuations of such town, city or ward; and in the assessment and collection of taxes of the next following *years* such town or city shall be credited with the amount of taxes levied from it on such excess of valuation, and the same shall be levied and collected from the other towns and cities of the county."

Carefully reading it we see that there was no limitation of the action of the board of supervisors to the next succeeding year after the appeal, but it may take place in the next following years.

It did not in terms authorize the comptroller to apportion the taxes caused to be paid by the agrieved town, upon the respective towns. It left that duty of apportionment in terms to the action of the board of supervisors. In these two particulars the subsequent legislation made changes. The effect of the added section 14, by virtue of the Laws of 1873, was to compel the determination and filing of it with the clerk of the board of supervisors "on or before the commencement of the next succeeding annual session thereof," *i. e.*, next after the appeal, and to provide that unless the determination and filing are so made, the appeal "*shall be null and void, and the same shall be deemed as dismissed.*" The act of 1874, chapter 351 provided for a change from the comptroller to the State assessors; that all pending appeals should be vested in the State assessors, and subsequent appeals should be to them; and imposed on the assessors all the duties, and vested in them the powers that, theretofore, were vested in or imposed on the comptroller. (Section 5.) This act also prescribed a rule in respect to costs and expenses of such appeals, authorizing the appellants costs and expenses, if unsuccessful, "to be levied upon and collected from the towns and cities of the county, *other than those* which by the determination of the appeal are credited by means of an excess of

valuation." Section 1 of the act of 1874 adds a 15th section to the act of 1859.

Now the second section of the act of 1874 provides that such costs and expenses shall, after they are *certified* by the State assessors to the board of supervisors, " be audited and levied by the board of supervisors at the next annual meeting thereof, after such costs and expenses shall be so *certified.*" Thus favoring a construction that the costs and expenses are all to be paid, and the appeals with their results adjusted at the meeting of the board of supervisors, which follows next after the taking of an appeal by an aggrieved town or ward, or city. But, however this may be, we turn to chapter 49 of the Laws of 1876, and find further provisions in respect to the appeals, the mode of hearing them, and the rules and regulations to be adopted in respect to them by the assessors. The third section of the act of 1876 prescribes certain duties, and the manner in which they shall be executed by the assessors. It is as follows : " On every such hearing or trial the evidence shall in part relate to the assessment and full and true value of real and personal property, and the said State assessors shall determine whether or not injustice has been done to the town, ward or city, so appealing, in the equalization of real and personal property assessed therein, as compared with the other wards, towns or cities of said county, and shall determine whether any, and if any, what deductions ought to be made from the aggregate corrected valuation of said real and personal property, as made by the board of supervisors, and shall also determine to what town or towns, ward or wards, city or cities, in such county said deductions, if any, shall be added, and shall certify their determination in writing to said board of supervisors, and forward the same by mail within ten days thereafter to the clerk of said board of supervisors, directed to him at his post-office address."

This section introduces a provision for the purpose of requiring the State assessors to determine " to what town or towns, ward or wards, city or cities," such deductions *shall be added.* Prior to the adoption of this section the provision of section 13, of the act of 1859, was that any such deduction " shall be levied and collected from the other towns and cities of the county." This section also declares the duty of the State assessors, viz. : (1.) To

determine whether or not injustice has been done to the town * * * appealing, in the equalization."

(2.) "To determine whether *any*, and if any, *what* deductions ought to be made from the aggregate corrected valuation * * * as made by the board of supervisors."

(3.) "And shall also determine to what towns * * * said deductions, if any, shall be added."

(4.) "And shall certify their determination in writing to said board of supervisors."

(5.) "And forward the same by mail, within ten days thereafter, to the clerk of said board of supervisors, directed to him at his *post-office* address."

These five subdivisions each contain a requirement from the State assessors. They each impose a duty. They are each made for the purpose of imposing a duty, and directing, not only what the duty is, but also how it shall be executed.

There is not one word in this section in respect to dismissal of appeals ; nor at what time, or under what circumstances, appeals shall be "null and void," and when they shall be deemed dismissed ; nor one word in respect to *laches* in obtaining the determination, and filing of the determination. The section seems to be formed for the purpose of imposing a duty. Whereas the amendment of 1873, in terms, prescribes what shall be the effect of delay to "determine and file." The language is clear and explicit that "any appeal," * * * "the determination of which is *not made and filed* with the clerk of said board of supervisors on or before the commencement of the next succeeding annual session thereof, shall be *null and void*, and the same shall be deemed as dismissed." Thus we see that the third section of the act of 1876 imposes duties and directions when and how they shall be performed. The act of 1873 declares when appeals shall be "null and void," and when they "shall be deemed as dismissed." The two statutes are not inconsistent. The act of 1876 does not, therefore, supersede or take the place of the provision of 1873 ; nor is the act of 1873 inconsistent with the act of 1876 in its provisions declaring the effect of a failure to file a determination with the clerk. In the case before us the appeals were taken in 1876.

The "commencement of the next succeeding annual session" of

the board of supervisors in Ontario county was October 2, 1877, and on that *commencement day* there had been no determination *filed* with the clerk of said board of supervisors," and the appeals, therefore, by the act of 1873, were declared " null and void," and " deemed as dismissed." This construction gives effect to both acts, and does not require us to declare the act of 1873 to be repealed by implication. Such repeals are not favored, especially when the antecedent provision is a part of a system prescribed. (*Hayes* v. *Symonds*, 9 Barb., 260; *Smith* v. *People*, 47 N. Y., 330; *The A. B. and C. Co.* v. *N. L. Company*, 53 id., 123; *Mongeon* v. *People*, 55 id., 613.)

The appellants insist that the three supervisors could not join in one *writ* of mandamus, as relators. The writ was for the purpose of enforcing a duty which related to the public, and in such cases it seems a special interest in the subject is not necessary. (*People* v. *Halsey*, 37 N. Y., 348; *People ex rel. Waller* v. *Supervisors of Sullivan County*, 56 id., 250.) The defendants made a return upon the merits, and if there was an improper joinder of relators they should have taken the objection by a motion to *quash* the writ. (*Commercial Bank* v. *Canal Com'rs*, 10 Wend., 26.) Not having done so, and having answered or made return upon the merits, the objection should be deemed waived. We cannot see in this particular case how the defendants could suffer by the union of these applications under one writ to compel a performance of a like duty towards three several towns or how it could prejudice the defendants. (*People* v. *Collins*, 19 Wend., 67.) The form of the mandamus should be such as to require a compliance with the duty imposed by statute. The better practice is to state just what is required, instead of requiring in general terms a compliance with the act. (*People ex rel. Green* v. *D. and C. R. R. Co.*, 58 N. Y., 163.) Because the " determinations " of the appeals before the State assessors were " not made and filed with the clerk of the board of supervisors of Ontario county, on or before the commencement of the next annual session," after the appeals in 1876 were taken, they were " null and void," and the same must be deemed as dismissed. The statute is absolute, and there can be no construction which shall take away its sweeping effect ; manifestly there is propriety in having every appeal, of the

character provided for, disposed of before the beginning of another session, which has power to make another valuation. There should be a limit in respect to the pending of such appeals, otherwise they would work very serious complication. They would lead to mischiefs as great as those which are to be cured by them.

The supervisors of Ontario were correct in concluding that, as the determination had not been " made and filed before their session commenced, the appeals were " null and void." They were, therefore, justifiable and right in refusing to pass the resolution which was offered in respect to the three appeals. Statutes prescribe limits for taking appeals from inferior tribunals. After the time has elapsed the right to appeal has gone. This statute prescribed the duration of such appeals as the three towns took, and after the expiration of the statutory period the appeals are *null and void,* and there is no power in the board of supervisors, the state assessors or the courts to revive them. They are and " shall be deemed as dismissed."

Since this opinion was prepared our attention has been called to the opinion of the Court of Appeals in *People ex rel. Supervisors of Westchester* v. *Hadley.* (MS., March 18, 1879.)

In that case the opinion states " that the return shows that it was forwarded by mail *in due* season to the clerks, and this, we think, was a substantial compliance with the law." No such fact appears in this case, and, as we have before seen the statute is imperative, we must conclude there was an entire failure to file, or to mail for filing before the first day of the annual session next after the appeal was taken.

The order of the Special Term, allowing a peremptory writ of mandamus and the judgment entered thereon, should be reversed, without costs, and the writ dismissed, without costs.

Talcott, P. J., concurred ; Smith, J., not voting.

Order of Special Term allowing writ, and judgment entered thereon reversed, without costs of the appeal, and writ dismissed, without costs.